IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO

DALE HILLER, d/b/a YouTube
Channel Lackluster,

        Plaintiff,

vs.　　　　　　　　　　　　　　　　Civil Action No. 1:22-CV-00865

CIRCLED WAGONS
MANAGEMENT, LLC, a New Mexico
Limited Liability Company, and
NICHOLAS LAYMEN,

        Defendants.

## COMPLAINT

### NATURE OF ACTION AND RELIEF SOUGHT

1.    This is a civil action seeking damages for misrepresentation under Title II of the Digital Millennium Copyright Act, as codified at 17 U.S.C. § 512.

2.    This case arises from Defendants' improper assertion of copyright infringement against Plaintiff, Dale Hiller, the owner and operator of the YouTube Channel, "Lackluster," which is a monetized YouTube channel currently having over 645,000 subscribers. Plaintiff frequently posts footage related to police misconduct, along with commentary, analysis, and information. On or about December 28, 2021, Lackluster posted a video titled, "Ex-Cop Knocks Out Postal Worker - His Old Department Lets Him Walk," portraying law enforcement body cam footage in the public domain. On or about January 6, 2022, Defendants issued a DMCA takedown notice to YouTube against the video, asserting alleged copyright ownership of the Lackluster video, which resulted in the viral video being taken down by YouTube for a period of time, as well as a copyright strike against the channel, which resulted in substantial monetary

damages to the Plaintiff. Defendants issued yet another DMCA takedown notice on January 7, 2022, resulting in yet another of Plaintiff's videos being taken down for a period of time.

3. Because the obtained video footage was generated by the City of Las Vegas, and because the video footage was not owned by Defendants, being in the public domain, the Defendants' assertion of copyright infringement was a knowing and material misrepresentation that Plaintiff's video infringed on Defendants' copyright ownership. Plaintiff seeks damages under the DMCA 17 U.S.C. § 512(f) in compensation for damages incurred by said misrepresentation by Defendants.

## PARTIES

4. Plaintiff is now and was at all times relevant hereto a resident of Hancock County, West Virginia. Plaintiff owns and operates a YouTube channel, "Lackluster."

5. Defendant CIRCLED WAGONS MANAGEMENT, LLC., is a New Mexico limited liability company who owns and operates YouTube channel, "Cop Watch TV," which has been renamed to "Cops&Cons," based out of Albuquerque, New Mexico, with a registered agent, Mark Anthony Aragon, 4431 Sherre Dr NE, Albuquerque, New Mexico 87111, and a principal place of business being the same. Mark Anthony Aragon, of the aforesaid address, and Nicholas Layman, of 7301 Rockwood Rd SW, Albuquerque, New Mexico, 87121, are the organizers of the LLC.  Upon, information and belief, Nicholas Laymen a Member of the Defendant LLC.

## JURISDICTION AND VENUE

6. This action arises under the copyright laws of the United States, 17 U.S.C. §§ 101 et seq., and Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

7. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

8. This Court has personal jurisdiction over CIRCLED WAGONS MANAGEMENT, LLC, because the said Defendant has a principle place of business in Albuquerque, New Mexico, within the District of New Mexico at Albuquerque, and upon information and belief engaged in the relevant conduct forming the basis of this action from within the said district.

9. This Court has personal jurisdiction over NICHOLAS LAYMAN because the said Defendant resides in Albuquerque, New Mexico, within the District of New Mexico at Albuquerque, and upon information and belief engaged in the relevant conduct forming the basis of this action from within the said district.

10. Venue for this action is proper under 28 U.S.C. §1391(b)(2).

## FACTUAL ALLEGATIONS

11. Plaintiff's YouTube channel is monetized, with over 645,000 subscribers, and features frequent videos related to police misconduct, including the frequent display of edited public domain video footage of the incidents, along with commentary, analysis and information, creating his own "derivative work" as defined in the Copyright Act.

12. Defendant's YouTube channels are also monetized, currently with around 374,000 subscribers, and contain the following description in the "About" section:

> Cop Watch provides viewers with an up front and behind the scenes look at police departments and their officers.
>
> Cop Watch profiles the real life RAW aspects of police departments. We go behind the scenes to see the real and courageous men and women who work in the various units within their departments.

> It is our focus to show viewers the officers and the different types of equipment which they use each day to help keep our communities safe. We specialize in and focus on footage obtained from department issued body cameras worn on officers from around the country.
>
> Many videos have adult content and viewer discretion is advised. The featured content is NOT intended to be violent or glorify violence in any way. We are sharing the footage STRICTLY for the purposes of news reporting and education.[1]

13. On or about January 6, 2022, Defendants issued a Digital Millennium Copyright Act ("DMCA") takedown notice against Plaintiff's YouTube channel, "Lackluster," asserting copyright ownership over Plaintiff's video titled, *"Ex-Cop Knocks Out Postal Worker - His Old Department Let's Him Walk,"* (https://youtu.be/8p6EYZgFuwI) which was originally posted on December 28, 2021.

14. The subject video portrayed body cam footage belonging to the City of Las Vegas, depicting an interaction between a retired Las Vegas police officer and a U.S. mailman, as filmed by responding law enforcement. It was obtained by Defendants via a Freedom of Information Act ("FOIA") request by Defendants on or about December 15, 2021, who uploaded the raw footage on December 16, 2021 to Defendants' YouTube channel, "Cop Watch TV," in a video titled, "Retired Cop Thumps Postal Worker Doesnt [sic] Get Arrested" (https://youtu.be/__XsWy0pCYs).

15. The subject footage was used in the December 28, 2021, Lackluster video, along with a link in the video description citing the Cop Watch video as the source of the raw footage clips utilized by the Lackluster video. The footage utilized in the Lackluster video did not contain any alterations or additions performed by Defendants, or any third party, other than a watermark added onto the raw footage by Defendants.

---

[1] https://www.youtube.com/c/CopWatchTV/about (Note: the last two sentences in Defendant's "About" description were added after the date of the events described herein.).

16. Defendants' December 16, 2021, video, as utilized by Plaintiff, contained no transformative characteristics, such as commentary, analysis, or other information, which could have created a "derivative work" under the Copyright Act.

17. Defendants' January 6, 2022, takedown notice resulted in the removal of Plaintiff's December 28, 2021 video, as well as an immediate "copyright strike" against his YouTube account. The said video was removed at the point it had reached 137,000 views. Compared with similar performing videos on the channel, it was on a course to continue to increase in views substantially.

18. Plaintiff immediately disputed the takedown and strike with YouTube upon being notified of the same. Upon information and belief, Defendants were informed of Plaintiff's dispute via their email address on file with YouTube, FireAndPoliceVideos@gmail.com. Plaintiff communicated the fact that Defendants did not own the video footage for which they asserted copyright ownership and that the footage was in the public domain.

19. Rather than immediately rectifying the wrongful takedown and strike, Defendants then issued yet another DMCA takedown notice against another one of Plaintiff's videos, which was a "short" excerpt of the same body came footage from the previously-stricken video entitled, "How would they treat you? #shorts" (https://youtu.be/J2A1DcVNqTY), which had been uploaded on December 26, 2021.

20. The second takedown notice by Defendants, occurring on January 7, 2022, resulted in the removal of Plaintiff's December 26, 2021, monetized video, as well as the issuance of a second copyright strike against the Plaintiff's YouTube account.[2] Plaintiff again

---

[2] Upon the issuance of a third copyright strike against a YouTube account, it then becomes subject to termination and the removal of all uploaded videos, on all associated accounts. This then leaves the owner unable to create new channels.

disputed the takedown and strike with YouTube upon being notified of the same. The said video was removed at the point it had reached 194,000 views. Compared with similar performing videos on the channel, it was on a course to continue to increase in views substantially.

21. Thereafter, Plaintiff contacted Defendants by telephone, in an attempt at rectifying the situation. Defendants acknowledged that they had no basis in which to assert copyright ownership to the video footage for which they asserted the takedown notices.

22. Defendants then requested the retraction of the takedown notices and strikes against Plaintiff's videos, after which the Plaintiff's videos were reinstated and the strikes removed.

23. On or about January 9, 2022, Plaintiff's December 28 video was reinstated on YouTube and once again began to garner monetized views. However, due to the takedowns, the video had lost its virility, resulting in substantially fewer views henceforth, and consequently, decreased ad revenue. As of the present date, the video still had garnered only around 201,000 views. Also as a consequence of the takedown and loss in virility, Plaintiff suffered additional associated damages resulting from a loss of video views, including a decrease in new subscribers, paid-memberships, merchandise sales and other financial damages.

24. On or about January 10, 2022, Plaintiff's December 26 video was reinstated on YouTube and once again began to garner monetized views. However, due to the takedowns, the video had lost its virility, resulting in substantially fewer views henceforth, and consequently, decreased ad revenue. Also as a consequence of the takedown and loss in virility, Plaintiff suffered additional associated damages resulting from a loss of video views, including a decrease in new subscribers, paid-memberships, merchandise sales and other financial damages.

## COUNT ONE - MISREPRESENTATION OF COPYRIGHT INFRINGEMENT UNDER DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 512(f))

25. Plaintiff alleges the preceding paragraphs as if fully set forth herein.

**17 U.S.C. § 512(f) generally**

26. The DMCA relieves internet service providers of liability for storing users' content if, in addition to other requirements, the provider "expeditiously" removes or disables content after receiving a takedown notification from a copyright holder that it is infringing. 17 U.S.C. § 512(c).

26. Title 17, United States Code, Section 512(c)(3)(A) outlines the content that a takedown notification must contain. Among other things, a takedown notification must include 1) a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and 2) a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. § 512(c)(3)(A)(v), (vi).

27. Title 17, United States Code, Section 512(f) creates civil liability for any person "who knowingly materially misrepresents [in a DMCA Takedown Notice] that material or activity is infringing." To sustain a claim for misrepresentation of copyright infringement under the DMCA, a plaintiff must prove by a preponderance of the evidence that (1) the defendant knowingly and materially misrepresented that copyright infringement occurred; (2) a service provider relied on that misrepresentation to remove or disable access to the material claimed to be infringing; and (3) the plaintiff was injured as a result. See 17 U.S.C. §512(f).

7

28. Because fair use negates an infringement claim, "the takedown notice requirements contained in § 512(c)(3)(A)(v) require copyright holders, before issuing the takedown notice, to consider whether the potentially infringing material is a fair use. And failure to consider fair use before issuing a takedown notice constitutes a misrepresentation of copyright infringement under § 512(f)." Johnson v. New Destiny Christian Ctr. Church, Inc., 826 Fed. Appx. 766, 771-72 (11th Cir. 2020) (*citing* Lenz v. Universal Music Corp, 815 F.3d 1145, 1151–1154 (9th Cir. 2016)).

29. The willful blindness doctrine "may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA." Lenz, 815 F.3d at 1155 (citing Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 35 (2d Cir. 2012)). Willful blindness means (1) the defendant subjectively believed there was a high probability that a fact exists and (2) the defendant takes deliberate actions to avoid learning of that fact." Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011). Therefore, "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." Id. at 769.

30. A person who violates Section 512(f)(1) is "liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it." 17 U.S.C. § 512(f).

8

## Derivative Works

31.     To qualify for copyright protection, a work must be original to the author. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Id.; see 1 M. Nimmer & D. Nimmer, Copyright ("Nimmer") §§ 2.01[A], [B] (2020); Desire, LLC v. Manna Textiles, Inc., 986 F.3d 1253 (9th Cir. 2021). A product of independent creation is distinguished from a copy in that it contains something which "owes its origin" to the independent creator. Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884). A copy, on the other hand, is not a separate work, but a mere representation or duplication of a prior creative expression. ABS Entm't, Inc. v. CBS Corp., 908 F.3d 405, 414 (9th Cir. 2018).

32.     A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. A derivative work is copyrightable when it meets two criteria: (1) "the original aspects of a derivative work must be more than trivial," and (2) "the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material." U.S. Auto Parts, 692 F.3d at 1016 (*citing* Durham Indus. v. Tomy Corp., 630 F.2d 905, 909 (2d Cir. 1980)). ABS Entm't, Inc. v CBS Corp., 908 F.3d 405, 414 (9th Cir. 2018).

9

33.     Plaintiff creates "derivative work" through taking public domain footage, such as police body camera footage, and transforms it with commentary, analysis, and other information.

34.     The Defendants' video titled, "Retired Cop Thumps Postal Worker Doesnt [sic] Get Arrested" (https://youtu.be/_XsWy0pCYs), for which Defendant asserted copyright ownership, did not consist of "derivative work," as it was simply a posting of raw public domain police body cam footage, obtained through a public records request, devoid of any transformative content.

35.     Merely adding a watermark or "Cop Watch" logo does not add anything original to the otherwise public domain footage, so as to create copyright ownership in the footage for which Defendant claimed copyright ownership. Rather, Defendants' said video created a "copy," rather than copyright. "[C]opies cannot qualify for copyright protection 'since obviously a copier is not a creator, much less an independent creator.'" Meshwerks, Inc. v. Toyota Motor Sales U.S.A., 528 F.3d 1258 (10th Cir. 2008); ABS Entm't, Inc. v. CBS Corp., 908 F.3d 405, 415 (9th Cir. 2018).

36.     Likewise, certain elements within a work, even if original, may be unprotectable even if other elements, or the work as a whole, warrant protection. Some material is unprotectable under federal copyright law "because it is in the public domain, which means that it 'is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work.'" Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 710 (2d Cir. 1992); Boisson v. Banian, 273 F.3d 262 (2nd Cir. 2000). Such is the case with public domain body cam footage. The result is that public domain body cam footage itself cannot be subjected to copyright protection. At least not without the insertion of creative input sufficient to trigger copyright protection.

37. On the other hand, a "compilation of non-protectible facts can qualify for copyright protection if it 'features an original selection or arrangement of facts,' Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), so that the selection or arrangement 'possesses at least some minimal degree of creativity,' id. at 345, 111 S.Ct. 1282." Moreover, "[s]election implies the exercise of judgment in choosing which facts from a given body of data to include in a compilation." Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 513 (2d Cir.1991); Mywebgrocer, LLC v. Hometown Info, Inc., 375 F.3d 190 (2nd Cir. 2004).

38. However, Defendants did not produce a compilation of non-protectable facts sufficient to qualify for copyright protection, as it was merely raw public domain footage with an added watermark.

### Defendants are Liable under 17 U.S.C. § 512(f)

39. Defendants knowingly and materially misrepresented that copyright infringement occurred when Defendants submitted DMCA Takedown Notices against Plaintiff's YouTube videos, as discussed and alleged in more detail above, on or about January 6, 2022, and January 7, 2002.

40. YouTube, the internet service provider hosting the subject videos, relied on those misrepresentations, removing the subject videos, as described above.

41. As a result of said Defendants' acts alleged herein, Plaintiff has suffered damages for which he is entitled to compensation.

42. As a result of Defendants' knowing material misrepresentations, Plaintiff is entitled pursuant to 17 U.S.C. § 512(f) to all damages, including costs and attorneys' fees, which it incurred as the result of said Defendant's misrepresentations.

11

WHEREFORE, Plaintiff respectfully requests this Court render an order granting Plaintiff:

a. All damages available at law;

b. Punitive damages based on the willful, intentional, and wrongful nature of Defendants' actions;

c. Plaintiff's costs in this action, including all costs and attorneys' fees; and

d. Such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted,

/s/ Gina T. Constant
Gina T. Constant
CONSTANT LAW, LLC
P.O. Box 91267
Albuquerque, New Mexico 87199
Phone: 505-242-0811
Fax: 505-503-7963
GTC@ConstantLawLLC.com

and

John H. Bryan
P.O. Box 366
Union, West Virginia 24983
Phone: 304-772-4999
Fax: 304-772-4998
jhb@johnbryanlaw.com
*Appearing pro hac vice pending*

*Attorneys for Plaintiff*

12

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dale Hiller

**DEFENDANTS**
Circled Wagons Managment, LLC
Nicholas Layman

**(b)** County of Residence of First Listed Plaintiff: Monroe, WV
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Bernalillo, NM
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gina Constant
Constant Law, LLC
7400 Hancock Court, NE, Suite C

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [x] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| | | | | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title II, Digital Millennium Copyright Act, as codified at 17 U.S.C. 512

Brief description of cause:
Wrongful issuance of a DMCA Take Down Notice

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $50,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE: 11-16-2022
SIGNATURE OF ATTORNEY OF RECORD: /GConstant/

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____